## Jim Thorpe Area School District v. Kidder Township Zoning Hearing Board

C.P. of Carbon County, no. 99-0041.

*David B. Consiglio,* for appellant.
*Cynthia S. Ray,* for appellee.
*Anthony J. Lucadamo,* for intervenor.

LAVELLE, *P.J.,* June 9, 1999—The principal issue presented in this zoning appeal is whether a political subdivision, through its zoning ordinance, may lawfully exclude public school buildings from being located in a particular district of the municipality. We hold that it cannot and, accordingly, we reverse the decision of the zoning hearing board which denied a zoning permit to School District. We also hold, as a matter of law, that Kidder Township's Zoning Ordinance is constitutionally invalid in that it effectively excludes public schools from the township.

## FINDINGS OF FACT

The Jim Thorpe Area School District acquired, by condemnation, fee simple title to a 50-acre tract of vacant land in Kidder Township, Carbon County, for the purpose of constructing a new primary school to accommodate children from kindergarten through eighth grade. The tract is located in an area zoned "Resort-Commercial (R-C)." School District then applied for a zoning permit. The zoning officer denied the application on the sole ground that a school was not a use which was allowed as a permitted use, special exception use or conditional use under article 4, section 404 of the Kidder Township Zoning Ordinance.[1] School District then filed a timely appeal from the zoning officer's decision to the Kidder Township Zoning Hearing Board. The Smith Family Limited Partnership, the owner of the adjoining tract, of which the proposed school site was formerly a part, intervened in opposition to School District's application.

### I. *Testimony Before the Zoning Hearing Board*

In its appeal to ZHB, School District attacked the validity of section 404 seeking to have this section of the ordinance declared unconstitutional on the ground that it effectively zones out schools from Kidder Township.

---

1. This section provides for various permitted, conditional and special exception uses in an R-C district, none of which includes a school. Among the principal permitted uses are single and multi-family homes, townhouses, commercial recreational facilities, retail stores and municipal, fire and ambulance buildings. The only area permitting schools in the township is in the R-3 district, where they are allowed by special exception.

ZHB conducted an evidentiary hearing on September 28, 1998, during which School District presented extensive testimony concerning its proposed project. The proposed school would house a maximum of 850 pupils in grades K through 8th in a two-story structure containing 8-9,000 square feet. (N.T. 23.) The facility was urgently, even critically, needed inasmuch as 350 students are currently being educated in temporary classrooms located in trailers behind the existing elementary school in Jim Thorpe. (N.T. 32.) Of the 50-acre site, 30 acres would be left in woods and approximately two acres would be occupied by buildings and other "impermeable" improvements, such as parking areas and outdoor recreational facilities. (N.T. 23.) School District conducted environmental studies which indicated that the project would have no adverse impact on the surrounding area. (N.T. 32-33.) The proposed site would cut transportation time for most students in half; for some students, who now spend an hour riding the bus, their trip to school would be reduced to 10 to 15 minutes. (N.T. 62.) School District's architect testified that in designing the project, he took particular care to comply with the requirements of the township's zoning ordinance, including redesigning the building to comply with the 40 foot height limitation. (N.T. 42.)

The testimony presented by School District, which included four witnesses and 32 exhibits, was substantially uncontradicted. The questioning by board members, on the other hand, appears from the record to be primarily hostile in nature, with most questions and comments suggesting that School District should look for another site, preferably outside of Kidder Township (see,

*e.g.,* N.T. 59-63, 68-72), or expand the existing elementary school in Jim Thorpe. (N.T. 74.) All parties agree that there are at present no operating public schools at all in Kidder Township. No evidence was presented by any party that the proposed school would adversely impact on the health, safety or general welfare of the surrounding community in any way; indeed, the unrebutted testimony of School District was that it would have a positive impact on the community.

## II. *Zoning Board's Decision*

In a decision dated December 17, 1998, ZHB unanimously affirmed the zoning officer's refusal to issue a permit and denied the appeal. Its decision relied primarily on the finding that schools were not permitted in an R-C zone, either by right or by conditional or special exception use. ZHB rejected School District's attack on the constitutional validity of section 404 on the ground that School District failed to meet its burden of proof. Finally, ZHB concluded that School District's plans did not satisfy the provisions of the ordinance requiring a centralized sanitary sewerage disposal system.[2] This timely appeal followed and Smith Family Limited Partnership intervened.[3]

---

2. We are constrained to observe that ZHB's conclusion is completely inconsistent with its statement at the ZHB hearing when it confirmed that in the area of the sewage disposal system, "this board does not have authority in that jurisdiction." (N.T. 53.)

Therefore, we shall not discuss this factor in ZHB's decision. It is irrelevant to the issue of whether a zoning permit should issue and further is within the exclusive jurisdiction of the Pennsylvania Department of Environmental Protection.

3. This is the second time this matter has been before the court. By order dated July 9, 1998, Judge Webb remanded to ZHB because the

### III. *Scope of Review*

Initially, we must note the scope of our review in zoning cases where, as here, we have not taken additional testimony is limited solely to the question of whether the zoning hearing board committed an abuse of discretion or an error of law. *Bachman v. Zoning Hearing Board of Bern Township,* 508 Pa. 180, 494 A.2d 1102 (1985).

### IV. *Issues Presented*

The instant appeal presents two distinct, but related, issues:

(1) whether section 404 of the Kidder Township Zoning Ordinance is constitutionally invalid because it effectively precludes School District from locating a public school in the township, and

(2) whether section 702 of the Public School Code (24 P.S. §7-702) preempts the use regulations of local zoning ordinances.

### V. *The Validity Challenge*

School District contends that section 404 of Kidder Township's Zoning Ordinance is de facto exclusionary because it permits public schools in only a minute percentage of the total land area within the township. ZHB and Smith argue that the ordinance is not exclusionary because it permits schools in an R-3 zoning district. We agree with the position of School District.

Our resolution of the validity argument requires us to apply the "fair share" analysis stated by our Supreme

---

public notice advertising the hearing failed to inform the public that the validity of the zoning ordinance was being challenged.

Court in *Township of Willistown v. Chesterdale Farms Inc.,* 462 Pa. 445, 341 A.2d 466 (1975). Under *Willistown* and its progeny, we must examine whether the township has provided a "fair share" of land for a particular use, in this case public school development. The "fair share" test requires "local political units to plan for and provide land-use regulations which meet the legitimate needs of all categories of people who may desire to live within its boundaries." *Surrick v. Zoning Hearing Board of Upper Providence Twp.,* 476 Pa. 182, 382 A.2d 105 (1977).

"The initial inquiry must focus upon whether the community in question is a logical area for development and population growth. . . . The community's proximity to a large metropolis and the community's and region's projected population growth figures are factors which courts have considered in answering the inquiry. . . . [T]he present level of development within the particular community must be examined. . . . [The] primary concern . . . is centered upon [the] ordinance's exclusionary impact." *Id.* at 192-93, 382 A.2d at 110.

In determining whether a particular community has met its "fair share" obligations, the court must consider a number of factors, including the percentage of land available under the zoning ordinance for the requested use, population growth and the amount of undeveloped land in the particular community. In the *Surrick* case, an apartment developer attacked the validity of a local zoning ordinance which permitted multi-family dwellings on only 43 acres, or approximately 1.14 percent of the total township acreage. Holding that the ordinance was exclusionary, the court noted:

"In analyzing the effect of a zoning ordinance, the extent of the exclusion, if any, must be considered. Is there total exclusion of multi-family dwellings . . . or is the exclusion partial? If the zoning exclusion is partial, obviously the question of the ordinance's validity is more difficult to answer. In resolving this issue, . . . the percentage of community land available . . . for multi-family dwellings becomes relevant. This percentage must be considered in light of current population growth pressure . . . and in light of the total amount of undeveloped land in the community. Where the amount of land zoned . . . for multi-family dwellings is disproportionately small in relation to these latter factors, the ordinance will be held to be exclusionary." 476 Pa. at 194, 382 A.2d at 111.

Viewing the unrefuted School District evidence in the light of the "fair share" standard, we are struck by these salient and unassailable facts:

(1) Kidder Township is a natural area for population growth for the municipality and School District.

(2) There is an urgent need for a new elementary school in the Jim Thorpe Area School District to serve pupils living in Southern Kidder and Penn Forest Townships; especially the 250 students who are now being taught in trailers.

(3) The location of the proposed school will dramatically reduce the amount of time pupils spend commuting to school.

(4) There are no operating schools at all in Kidder Township.

(5) Kidder Township contains a total area of approximately 76 square miles.

(6) The only area in Kidder Township in which schools are a permitted use is the R-3 zoning district.[4]

(7) The R-3 zoning district consists of only 1,515 acres, or approximately 2 percent of the total land area within the township, although there was no testimony as to how much of that acreage might be potentially available for school development purposes.

(8) The site selected for the proposed school is suitable and appropriate, and the project will have no adverse environmental impact, nor will it otherwise adversely affect public health, safety or welfare.

These facts and the "fair share" analysis in which the exclusionary impact of the proposed use is paramount, compels the conclusion that section 404 is invalid. Its impact is that Kidder Township has no schools and the inference is inescapable that the ordinance is designed to keep out schools.

ZHB and Smith's argument that Kidder's zoning ordinance is not exclusionary because schools can be built in R-3 misses the whole point of School District's challenge. Section 702 of the school code, as we shall point out below, gives School District the sole authority to put the school where it currently plans. Neither ZHB nor Smith can curtail or impair School District's 702 prerogative by telling it to locate its school somewhere else.[5]

---

4. We note that the R-3 zone is not within School District's territorial limits; however, under section 704 of the Public School Code (24 P.S. §7-704) a school district may exercise its eminent domain powers anywhere in the Commonwealth and is not confined to sites within its own boundaries.

5. Parenthetically, this argument lends support to School District's contention, which is  unproven on the record and cannot form the basis for our decision here, that the overarching basis for ZHB's refusal to grant School District a permit is the NIMBY (Not In My Back Yard) Syndrome.

ZHB, in its decision denying School District's permit, cited a lack of proof of the invalidity of the ordinance.

The burden of proof in a validity case, of course, rests with the party seeking to have the ordinance declared invalid. *National Land and Investment Co. v. Easttown Township Board of Adjustment,* 419 Pa. 504, 215 A.2d 597 (1965). There is also a strong presumption in favor of an ordinance's validity. *DeCaro v. Washington Township,* 21 Pa. Commw. 252, 344 A.2d 725 (1975). However, where the zoning ordinance is exclusionary on its face, or where the applicant shows either that the ordinance is de facto exclusionary or fails to provide for its "fair share" of the use, the burden of proof shifts to the municipality. *Cutler v. Newtown Township Zoning Hearing Board,* 27 Pa. Commw. 430, 367 A.2d 772 (1976).

The practical and real effect of section 404 is the total exclusion of public schools from Kidder Township. Schools, in other words, are effectively "zoned out" of Kidder Township. Further, as we have demonstrated, Kidder Township has clearly not provided a "fair share" of its land for the development of public schools. Therefore, we are persuaded that School District presented sufficient evidence to shift the burden of proof. No rebuttal evidence has been produced by ZHB or Smith. We conclude that School District has proven its invalidity case.

## VI. *The Preemption Issue*

School District's second argument is that section 702 of the Public School Code preempts the use limitations of local zoning regulations, vesting in school directors the unfettered power to locate schools anywhere within a municipality.

What is presented here, of course, is a classic conflict between the competing interests of two political subdivisions of the Commonwealth: on the one hand, the right of a school district to determine the location of its facilities, and on the other, the interests of a township or other municipality in generally regulating land use and development within its borders. Section 702 of the school code gives school directors the exclusive power to determine "[t]he location and amount of any real estate required by any school district for school purposes. . . ." Section 704 specifically gives school districts the right to locate schools outside of their municipal boundaries. When the exercise of these powers by school districts comes into conflict with local zoning regulations which purport to totally exclude schools from certain areas, our appellate courts have consistently held that the power of a school district to determine the location of its schools must prevail over the more general and parochial powers of zoning authorities. This is not to say that school districts enjoy a blanket immunity from the provisions of zoning ordinances. On the contrary, it is clear that such zoning regulations as off-street parking requirements, lot density and dimensional limitations are just as applicable to schools as they are to any other buildings regulated by a zoning ordinance. But what a municipality cannot do, through its zoning regulations, is exclude school buildings entirely from certain districts. This is exactly what Kidder Township is attempting to do in the case under review.

Our guiding light in these cases has always been, and remains, the Supreme Court's decision in *Radnor Township School Authority v. Pemberton,* 434 Pa. 249, 252

A.2d 597 (1969) (commonly referred to as *Pemberton Appeal*). In that case, as in the instant appeal, a school authority acquired property in a zoning district where schools were not permitted under the ordinance. In affirming the reversal of the zoning board's denial of a permit, the Supreme Court noted:

"[Section] 702 of the Public School Code clearly and unequivocally vests precise and specific power in the school district and directors thereof to locate, determine, acquire, and if necessary condemn, all real estate deemed necessary for schools. And the township's zoning regulation clearly is determining the locations of schools. It thus cannot be squared with [section] 702." *Pemberton Appeal* at 256, 252 A.2d at 600.

In reconciling the conflict between the provisions of the school code and the regulatory powers vested in the township by the First Class Township Code, the court applied section 63 of the Statutory Construction Act which provides that whenever a conflict arises between a general provision in a law and a special provision in the same or another law, the special provision shall prevail.

*Pemberton Appeal, supra,* makes it clear that where the unfettered right of a school district to determine the location of a school comes into conflict with the provision of a local zoning ordinance, the zoning provisions must yield to the school authority's powers under section 702.

Faithful to the Supreme Court's ruling in *Pemberton Appeal* case, in *Sto-Rox School District v. Zoning Hearing Board of Kennedy Township,* 674 A.2d 352 (Pa. Commw. 1996), the court of common pleas addressed a

situation, mirroring the one at bar, in which a zoning hearing board refused to issue a zoning permit under the guise of a prohibition found in the local ordinance. The Commonwealth Court, in adopting the rationale of the court of common pleas, in toto, stated that "the specific power of the school board over schools must prevail over the more diffuse power of the municipality to regulate the construction and location of buildings in general." *Sto-Rox* (adopting the decision of the court of common pleas, p. 7). (emphasis added) The court rejected the township's asserted right to deny a school district a zoning permit on the basis that the zoning ordinance did not allow a school in a particular zoning district.

ZHB and Smith urge that the Commonwealth Court in its recent decision in *Hazleton Area School District v. Zoning Hearing Board of Hazle Township,* 720 A.2d 220 (Pa. Commw. 1998), is now departing from the principles enunciated in *Pemberton Appeal.* We do not agree with that analysis. *Hazleton* involved not an application to locate a school, but rather an application to expand an existing use of a school athletic field for non-school-related facilities. In affirming the denial of the application, the court properly held that the powers vested in school districts under the school code did not effect a total pre-emption of local zoning regulation. This decision is totally consistent with *Pemberton Appeal,* which expressly holds that a school district must generally comply with all other zoning regulations, such as off-street parking facilities, dimensional requirements, etc. See also, *Sto-Rox School District v. Zoning Hearing Board of Kennedy Township,* 674 A.2d 352 (Pa. Commw. 1996) and *School District of Philadelphia v. Zoning Board of Adjustment,* 417 Pa. 277, 207 A.2d 864 (1965).

ZHB and Smith's reliance on *Council Rock School District v. Wrightsville Township Zoning Hearing Board,* 709 A.2d 453 (Pa. Commw. 1998) is also misplaced and inapposite. *Council Rock* involved an application for a special exception to build a school. The zoning board denied the application because the school district failed to supply any information to the board regarding its project with the exception of a basic plot plan. The Commonwealth Court affirmed, finding that the applicant made no effort whatsoever to comply with the requirements of the ordinance, relying, instead, on a bald declaration of its intention to build a school. We do not find *Council Rock* inconsistent with the Supreme Court's decision in *Pemberton Appeal,* since the former case did not involve an attempt to "zone out" schools in the zoning district under consideration. That school districts, just like any other developer, must comply with all of the technical and administrative requirements of a zoning ordinance is undisputed.

As counsel for School District points out in his brief, "the efforts of the school district in this case to comply with the zoning ordinance are and were extensive. Unlike the Council Rock School District, the Jim Thorpe Area School District submitted 32 exhibits, four witnesses, three of whom were experts, and virtually begged the ZHB to grant the zoning permit and attach any reasonable conditions. The district implored the ZHB to be reasonable:

"I can't stress to the board enough that the school district is desperate to move forward with this project because there are so many children in the portable classrooms, and *if you find it necessary that the permit should*

*have conditions such as the ones you've talked about, I would urge you to do so and put those on there and the district will comply* because as I said we're very, very, very pressed to try to move this project along." (N.T., 9/28/98, p. 36.) (emphasis added)

In fact, the township's zoning officer testified that she had no problem with the plans that were submitted and that no variances were required for the project, and were it not for the fact that schools were not permitted in an R-C zone, she would have approved the application. (N.T. 42-44.)

Finally, Smith suggests that the Supreme Court has impliedly overruled *Pemberton Appeal* in its more recent decision in *Commonwealth, Department of General Services v. Ogontz Area Neighbors Association,* 505 Pa. 614, 483 A.2d 448 (1984). We disagree. *Ogontz* involved an attempt by the Department of General Services, an agency of the Commonwealth of Pennsylvania, to locate a development center for mentally handicapped persons in a neighborhood where such a use was not permitted under the Philadelphia Zoning Code. In holding that the use provisions of the zoning ordinance were controlling, the majority rejected the state's contention that the grant of eminent domain powers *necessarily* indicates a legislative intent to override local zoning regulations. Discussing *Pemberton Appeal* and the cases which followed it, the Supreme Court noted that:

"The common thread running through these cases is the assertion that 'When there is an apparent conflict in the use of [land use] powers we must look to the intent

of the legislature to determine which exercise of authority is to prevail.' *City of Pittsburgh,* 468 Pa. at 182, 360 A.2d at 612. Since legislative intent is not always self-evident, this court adopted the balancing test . . . in which the nature and purpose of the legislative grant and the facts of the case are examined in an attempt to determine which agency the legislature intended to be preeminent. . . .

"It now appears to us that although our past emphasis on discovering the legislative intent was correct, this court's earlier view that eminent domain powers necessarily indicate a legislative intent that the agency may override local zoning regulations, should no longer control." 505 Pa. at 625-26, 483 A.2d at 453-54.

In the case of school districts, however, we believe that the powers granted by the school code with respect to the location of school buildings would essentially be frustrated and rendered meaningless if such decisions were subject to the veto power of zoning regulations. Zoning authorities would be the ultimate arbiters of where schools were located, clearly a result not intended by the legislature in enacting section 702 of the school code. The court noted in *Ogontz* that the loss of a mental health center in one area might easily be compensated by the substitution of another location. The court, invoking the Statutory Construction Act, 1 Pa. C.S. §1921(c)(6), found that the legislative mandates given to the Department of General Services to establish mental health service and that given to the City of Philadelphia to regulate land use could both be implemented by the simple expedient

of the agency relocating its center to another district in which such facilities were permitted under the zoning code. But the same argument cannot be made in the case of public schools. Their location, in terms of proximity to students' homes, availability of roads and other facilities, is critical to their function and best determined by the elected school directors, in accordance with the express powers vested in them by the legislature. The argument in favor of preemption in the case before us becomes even more compelling when the court is confronted with an ordinance which effectively "zones out" schools from the entire township.

## CONCLUSION

For the foregoing reasons, we shall reverse the decision of the Kidder Township Zoning Hearing Board to the extent that it holds that a public school is not a permitted use in an R-C district under section 404 of the Kidder Township Zoning Ordinance, and we hereby enter the following order:

## ORDER

And now June 9, 1999, it is hereby ordered and decreed as follows:

(1) The appeal of Jim Thorpe Area School District is sustained and the decision of the Zoning Hearing Board of Kidder Township is hereby reversed.

(2) The zoning hearing board is forthwith ordered to issue a zoning permit to the Jim Thorpe Area School District.