**In Re: Petition of COMMISSIONERS OF CARBON COUNTY to Lay Out and Open County Road.**

**Appeal of: Commissioners of Carbon County.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2013.
Decided Nov. 15, 2013.

Edward J. Hughes, Plymouth Meeting, and Daniel A. Miscavige, Hazleton, for appellants.

Thomas S. Nanovic, Jim Thorpe, for appellees Mahoning Township and Mahoning Township Board of Supervisors.

BEFORE: SIMPSON, Judge, LEAVITT, Judge, and McCULLOUGH, Judge.

OPINION BY Judge LEAVITT.

The Commissioners of Carbon County appeal an order of the Court of Common Pleas of Carbon County (trial court) denying their petition to lay out roads in Carbon County under authority of what is hereinafter referred to as the County Road Law.[1] The proposed roads will serve a business park the County seeks to develop on its land. The trial court denied the County's petition because the roads as proposed will not satisfy the construction specifications required for roads in Mahoning Township, where the roads will be built. The County argues that the trial court erred because the County Road Law preempts a township's authority to regulate county roads. For the reasons that follow, we affirm.

The relevant facts are not in dispute. The County seeks to develop a 70–acre vacant parcel of land that is located, principally, in Mahoning Township. The County hopes to attract new businesses and create jobs by turning this parcel into "Packerton Business Park." To that end, the County

---

1. Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §§ 2701–2787. Chapter 27 is part of The County Code, 16 P.S. §§ 101–3000.3903.

proposes two roads to service this development.

First, the County proposes to move a 150–foot portion of a Township road, Packerton Hollow Lane, and make it a County road. Under the County's plan, the relocated road will be constructed with an 18–foot wide cartpath and three-foot shoulders on each side, for a total width of 24 feet. Second, the County proposes to construct a new 5,000–foot long road to be called "Business Park Drive."[2] Business Park Drive will provide the main means of ingress and egress for Packerton Business Park, and it will not have sidewalks.

In May 2010, the County submitted a subdivision and land development plan for Packerton Business Park to the Township Supervisors. The County requested and received waivers from various requirements of the Township's Subdivision and Land Development Ordinance (SALDO).[3] In September 2012, the Township rejected the County's plan because it did not provide for sidewalks along Business Park Drive and the relocated portion of Packerton Hollow Lane will not satisfy the SALDO's requirements for a 20–foot wide cartpath and a six-foot wide shoulder on each side.[4] Reproduced Record at 43a (R.R.

——). The County has appealed the Township's denial of its preliminary plan.[5]

The County then filed a petition under the County Road Law to reconstruct and take ownership of Packerton Hollow Lane and to construct Business Park Drive. The Township intervened to oppose the petition because the proposed roads would not comply with the Township's SALDO. The trial court conducted a hearing on the County's petition.[6]

At the hearing, the County presented the testimony of its civil engineer, Ronald M. Tirpak, P.E., who designed the roads that were the subject of the County's petition. Tirpak explained that Business Park Drive will run from State Route 209 into Packerton Business Park. Tirpak testified that having sidewalks on this road, as required in the SALDO, would be dangerous. Route 209 has no sidewalks, narrow shoulders and narrow travel lanes; it has considerably more traffic than Business Park Drive is expected to have. Because it is narrow and busy, Route 209 is not suitable for foot traffic. Putting sidewalks on Business Park Drive will encourage people to walk on Route 209. In addition, Business Park Drive will cross over railroad tracks, and it is unlawful for side-

2. Notably, 50 feet of the southern end of Business Park Drive will be located in Lehighton Borough. Lehighton Borough did not participate in the proceedings before the trial court and is not participating in the current appeal.

3. MAHONING TOWNSHIP SUBDIVISION AND LAND DEVELOPMENT ORDINANCE, adopted August 23, 2000, by Ord. No. 2000–7, *as amended,* codified as chapter 99 of the Mahoning Township General Code on November 1, 2011.

4. Section 99–17(A)(1) of the SALDO states as follows:

The provision of street pavement, curbs and sidewalks on all proposed or required public and private streets shall be as shown on Table IV. All streets shall be graded, sur-

faced and improved to the grades and dimensions shown on plans, profiles and cross sections submitted by the subdividers and approved by the governing body.

SALDO § 99–17(A)(1) at 99:28. Table IV is found on the next page of the SALDO and lists construction standards for different types of roads as well as sidewalks.

5. According to the County, the land use appeal is currently on hold pending the outcome of this litigation.

6. Section 2740 of the County Road Law requires the County to file a petition with attached road surveys and plans with the court. The court must hold a hearing, of which the public is given advance notice. 16 P.S. § 2740.

walks to be constructed over railroad tracks.

Packerton Hollow Lane presently intersects with Route 209 and will be moved to intersect with Business Park Drive. Tirpak described Packerton Hollow Lane as "basically an unmaintained road" that serves one home. R.R. 66a. It is principally constructed of gravel, with some blacktop, and varies in width from 12 feet to 20 feet. Although a Township road, Packerton Hollow Lane does not meet Township standards. When reconstructed, Packerton Hollow Lane will be wider than it is now and markedly improved. Further, the County will assume responsibility for its maintenance. Tirpak estimated the construction cost for both roads at $3.2 million.

The County also presented the testimony of County Commissioner Wayne Nothstein. Nothstein testified that the Commissioners agreed with Tirpak that sidewalks along Business Park Drive would be dangerous and that the proposed width of the relocated portion of Packerton Hollow Lane was adequate for the safety and accommodation of the public.

In response, the Township presented the testimony of John J. Wieczorek, Chairman of the Township's Board of Supervisors. Wieczorek confirmed that the Township denied the County's plan because the proposed roads do not conform to the requirements of the Township's SALDO.

■ The trial court denied the County's petition. Under Section 2740(b) of the County Road Law, the trial court may disapprove a county road petition "for proper cause shown." 16 P.S. § 2740(b).[7] The trial court found proper cause to disapprove the County's petition because its proposed roads did not satisfy the SALDO. The trial court rejected the County's argument that the County Road Law preempted the Township's SALDO. The trial court concluded that the County Road Law was not intended to supersede the Township's SALDO and that the consequences of requiring the County to comply were minimal.[8] This is because the County could exercise the power to open county roads *and* comply with the SALDO. The present appeal followed.[9]

On appeal, the County argues that the trial court erred. The County posits that laying out and constructing county roads is an activity separate and apart from land development. Accordingly, the Township SALDO was irrelevant to its road petition. Alternatively, the County contends that the language of the County Road Law expresses its preeminence over a second class township's SALDO.[10] Any other interpretation will defeat the purposes of the County Road Law because a single county road may cross several townships, each of

7. Section 2740(b) states, in relevant part, as follows:

Upon the hearing [of the county's petition], the court may, for proper cause shown, disapprove the petition; otherwise, it shall approve the same and order that the improvement be made and constructed in accordance with the plans and surveys accompanying the petition.
16 P.S. § 2740(b).

8. The trial court applied the two-part test announced by the Pennsylvania Supreme Court in *Department of General Services v.*

*Ogontz Area Neighbors Association,* 505 Pa. 614, 483 A.2d 448 (1984), discussed *infra.*

9. This case involves an issue of statutory interpretation, which is a pure question of law. *Philomeno & Salamone v. Board of Supervisors of Upper Merion Township,* 600 Pa. 407, 411, 966 A.2d 1109, 1111 (2009). Questions of law are subject to *de novo* review, and our scope of review is plenary. *Id.*

10. Mahoning Township is a second class township, and Carbon County is a sixth class county.

which may have different dimensional requirements. Further, the County will bear the expense of constructing and maintaining the proposed County roads. It does not advance sound public policy to allow a township, effectively, to spend county money.

The Township rejoins that the SALDO applies to the County's proposed roads because they are integral to the County's land development plan. Because there is no conflict between the County Road Law and the SALDO, the County can comply with both. The Township argues that, in any case, the County has waived its right to argue that the County Road Law preempts its SALDO.[11]

■ We begin with the Township's waiver argument. The Township makes much of the fact that the County requested the Township's review and approval of its subdivision and land development plan; over the course of two years, the Township granted numerous waivers from the SALDO's requirements. Only when it appeared that the Township would not grant

waivers for the sidewalk and road dimensional requirements did the County take the position that the SALDO was preempted by the County Road Law. The Township argues that the County submitted to the Township's jurisdiction, and it is too late to argue otherwise.

The County's response is twofold. First, it asserts that the Township cannot raise the issue of waiver because it failed to raise it as an affirmative defense in its answer to the County's petition. Second, the County argues that it did not waive any legal rights by attempting, in good faith, to work with the Township.

■ The Pennsylvania Rules of Civil Procedure provide that waiver is an affirmative defense that must be raised in new matter; if not, the defense is waived. PA. R.C.P. Nos. 1030, 1032;[12] *Hanrahan v. Audubon Builders, Inc.,* 418 Pa.Super. 497, 614 A.2d 748, 752 n. 3 (1992). Because the Township did not raise waiver as an affirmative defense in its answer, it was barred from doing so at the trial court proceeding or on appeal to this Court. In

---

**11.** The Pennsylvania State Association of Township Supervisors, a non-profit association representing the interests of over 1,400 second class townships, has filed an *amicus curiae* brief in support of Mahoning Township's position.

**12.** Rule 1030 states as follows:

(a) Except as provided by subdivision (b), *all affirmative defenses including* but not limited to the defenses of accord and satisfaction, arbitration and award, consent, discharge in bankruptcy, duress, estoppel, failure of consideration, fair comment, fraud, illegality, immunity from suit, impossibility of performance, justification, laches, license, payment, privilege, release, res judicata, statute of frauds, statute of limitations, truth and *waiver shall be pleaded in a responsive pleading under the heading "New Matter."* A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading.

(b) The affirmative defenses of assumption of the risk, comparative negligence and contributory negligence need not be pleaded.

PA. R.C.P. No. 1030 (emphasis added). No party has raised the issue of whether the Pennsylvania Rules of Civil Procedure apply to a statutory proceeding brought under the County Road Law.

Rule 1032 states, in relevant part, as follows:

(a) *A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply,* except a defense which is not required to be pleaded under Rule 1030(b), the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, the objection of failure to state a legal defense to a claim, the defenses of failure to exercise or exhaust a statutory remedy and an adequate remedy at law and any other nonwaivable defense or objection.

PA. R.C.P. No. 1032(a) (emphasis added).

any case, the County did not waive its right to file a petition under the County Road Law, which it believes supersedes the Township's SALDO. The cases cited by the Township, such as *Samuel J. Marranca General Contracting Co., Inc. v. Amerimar Cherry Hill Associates L.P.*, 416 Pa.Super. 45, 610 A.2d 499 (1992), are distinguishable. They involved parties that attempted to move a controversy already in litigation to arbitration. Here, by contrast, there was no litigation when the County filed its road petition.

We next address the County's argument that the Township's SALDO is irrelevant to its proposed roads. The County argues that the SALDO governs all aspects of the Packerton Business Park, save the proposed county roads. Only the County Road Law applies when a county proposes to construct, own and maintain a County road.

At the hearing, Commissioner Nothstein testified that Business Park Drive and Packerton Hollow Lane are needed to serve Packerton Business Park. This testimony establishes that the County's proposed roads are inextricably linked to the County plan for Packerton Business Park. Given this circumstance, the trial court held that the County must comply with the SALDO when developing roads that are part of a development. The question, then, is whether the County Road Law preempts the Township's SALDO.

The leading case is *Department of General Services v. Ogontz Area Neighbors Association*, 505 Pa. 614, 483 A.2d 448 (1984). At issue in *Ogontz* was the proposed construction of state mental health facilities in a Philadelphia neighborhood that was zoned residential. The Philadelphia Zoning Board denied the Department of General Services a permit because the proposed use was not permitted in a resi-

dential district. The Department appealed, arguing that the Zoning Board could not impose any restrictions on a building to be erected under the authority of the Mental Health and Intellectual Disability Act of 1966.[13] The Pennsylvania Supreme Court denied the appeal and established a test to be used "[w]hen there is an apparent conflict in the use of [land use] powers" by two different governmental entities or agencies. *Id.* at 625, 483 A.2d at 453–54.

Noting that the legislature created both the Department of General Services and the Philadelphia Zoning Board, the Supreme Court identified the Department's preemption claim as one of statutory construction:

> [T]he conflict that arises when a Commonwealth agency seeks to utilize real property in a manner that conflicts with a municipal corporation's zoning regulations is not a contest between superior and inferior governmental entities, but instead a contest between two instrumentalities of the state. The legislature has the power to regulate both of these governmental entities, enlarging or restricting their authority to act; and generally, *the task of courts in these cases is to determine, through an examination of the enabling statutes applicable to each of the governmental entities, which the legislature intended to have preeminent powers. The problem, essentially, is one of statutory interpretation.*

*Id.* at 622–23, 483 A.2d at 452 (internal citation omitted) (emphasis added). The Court adopted a two-part test for resolving this statutory construction problem. First, courts must ascertain the priority of the two governmental entities from the relevant statutory language. If a priority

---

13. Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended*, 50 P.S. §§ 4101–4704.

cannot be discerned from the applicable statute, then courts must

> turn to the statutory construction rule that legislative intent may be determined by a consideration, *inter alia,* of the consequences of a particular interpretation. Statutory Construction Act, 1 Pa.C.S.A. § 1921(c)(6).

*Id.* at 628, 483 A.2d at 455.

Concluding that the relevant statutes did not provide a clear answer on priority, the Court analyzed the consequences of having the Department or the City prevail in the controversy. It concluded that upholding the zoning ordinance was preferable because it would not frustrate the Commonwealth's ability to build mental health facilities. It reasoned as follows:

> The consequences of deciding that the Commonwealth should be preeminent in this matter are that Philadelphia's zoning scheme would be frustrated in this case and in every other case where a Commonwealth land use plan conflicted with the city plan. On the other hand, if the city were to prevail, the Commonwealth's mandate to establish mental health facilities at various locations in the state would not necessarily be frustrated, for the loss of one location might well be compensated for by substitution of another. *Thus, deciding that the city's zoning authority supersedes that of the Commonwealth agency to establish a mental health facility in a particular geographical location arguably would give effect to the legislative mandates of both governmental entities, a consequence which, absent more certain legislative direction, seems advisable.* Accordingly, we hold that [the Department of Public Welfare (DPW)] is subject to the jurisdiction of the Zoning Board and that in the case of a conflict between DPW's land use plans and the zoning use regulatory scheme of Philadelphia, the zoning scheme shall prevail.

*Id.* (emphasis added).[14]

Under *Ogontz*, we first examine the relevant provisions of the County Road Law and the Pennsylvania Municipalities Planning Code (MPC),[15] the source of the Township's enactment of its SALDO. The object is to determine whether the County Road Law is preeminent.

14. The Supreme Court revisited the issue in *County of Venango v. Borough of Sugarcreek, Zoning Hearing Board,* 534 Pa. 1, 626 A.2d 489 (1993), a case where a county sought to construct a jail on land it owned in a residential zone within the borough. The zoning board denied the county's request for a special exception because a jail was not a permitted use in the residential zone. The Supreme Court determined that the County Code was not specific with regard to zoning and, thus, contained no clear legislative direction that the county could build a jail without regard to local zoning restrictions. Applying the *Ogontz* test, the Court held that the borough's zoning scheme must prevail because:

> The consequences of deciding that the County should be preeminent in this matter are that the Borough's zoning scheme would be frustrated in this case and in every other case where a County land use plan conflicted with the Borough plan and

the County was carrying out one of its enumerated powers "as authorized by law." On the other hand, if the Borough were to prevail, the County's power to locate jails and other facilities would not necessarily be frustrated, for it is possible to exercise this power consistent with local comprehensive land use plans by acquisition of other parcels zoned to accommodate such uses.

*County of Venango,* 534 Pa. at 7, 626 A.2d at 491–92.

In *Borough of Beaver v. County of Beaver,* 157 Pa.Cmwlth. 185, 629 A.2d 240 (1993), decided less than two months after *County of Venango,* this Court faced the same issue and issued an identical ruling, enjoining the County from building a jail in a residential area without first receiving approval from the zoning board.

15. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

Section 2702 of the County Road Law, entitled "Establishing county roads," empowers a county to lay out and open county roads. It states as follows:

> For the purpose of providing public roads, *specially constructed, improved and maintained,* the county commissioners may, upon approval by the court of quarter sessions, originally lay out and open any road, and take possession of and exercise control over any existing township road or part thereof, and build and maintain roads as county roads within their respective limits. *They may, at any time, straighten, widen, extend and alter any such road or part thereof,* and vacate so much thereof as may become unnecessary and useless. *Any road so taken over or improved shall thereupon become a county road and be subject to the control and supervision of the county commissioners.* It shall be the duty of the county to keep and maintain county roads established under this act and all other county roads in repair, the expense thereof to be paid by the county in the manner hereinafter provided.

16 P.S. § 2702 (emphasis added). Section 2713 of the County Road Law authorizes a county to construct sidewalks, and states as follows:

> *Whenever considered necessary for the safety and accommodation of the public,* the county commissioners may locate, construct and maintain sidewalks along county roads. The cost of the construction and maintenance of said sidewalks shall be paid by the county.

16 P.S. § 2713 (emphasis added).

The Township adopted its SALDO pursuant to Section 501 of the MPC, which states, in relevant part, that:

> The governing body of each municipality may regulate subdivisions and land development within the municipality by enacting a subdivision and land development ordinance. The ordinance shall require that all subdivision and land development plats of land situated within the municipality shall be submitted for approval to the governing body[.]

53 P.S. § 10501. Section 503(3) of the MPC provides that a SALDO may contain standards for streets and walkways. It states, in relevant part, that a SALDO may include:

> [p]rovisions governing the *standards by which streets shall be designed, graded and improved, and walkways,* curbs, gutters, street lights, fire hydrants, water and sewage facilities and other improvements *shall be installed* as a condition precedent to final approval of plats in accordance with the requirements of section 509. The standards shall insure that the streets be improved to such a condition that the streets are passable for vehicles which are intended to use that street[.]

53 P.S. § 10503(3) (emphasis added).

■ In support of its position that the County Road Law should prevail over the SALDO, the County points to Section 103 of the MPC, which states, in relevant part, as follows:

> *The provisions of other acts relating to municipalities* other than cities of the first and second class and counties of the second class *are made a part of this act* and this code shall be construed to give effect to all provisions of other acts not specifically repealed.

53 P.S. § 10103 (emphasis added).[16] Section 103 makes the provisions of the County Road Law part of the MPC, requiring

16. Section 1201 of the MPC, 53 P.S. § 11201, enumerates the statutory sections that were specifically repealed. No section of the County Road Law was repealed.

courts to "give effect to all provisions" of the County Road Law. The County argues that if county roads must be built to the specifications of a SALDO, then "all provisions of other acts," *i.e.*, the County Road Law, will not be given effect. Stated otherwise, the County believes that Section 103 of the MPC proves the legislature's intention that the County Road Law be preeminent over local ordinances also adopted pursuant to the MPC.

■ We reject this construction of the County Road Law and the MPC. Section 103 states that this Court must give effect to all provisions of the County Road Law, but it does not state that a county may open county roads that are an integral part of a subdivision plan without complying with a SALDO, where one exists. Section 103 is simply not dispositive of the question of whether the County Road Law, and not the SALDO, was intended to apply here.[17]

In short, neither the County Road Law nor the MPC establishes preeminence. This requires an examination of the consequences of having the SALDO prevail in the present controversy.

■ The County states that the conflict in this case involves "only the design of a road and the details of construction ... specifically sidewalks and the width of a 150 foot road." County Brief at 21, 23. Section 503 of the MPC empowered the Township to adopt "[p]rovisions governing the standards by which streets shall be designed, graded and improved, and walkways ... shall be installed" in a subdivision. 53 P.S. § 10503(3). The Township did so in Section 99–17 of the SALDO, which has specific construction standards for sidewalks and roads. By contrast, the County Road Law does not impose any technical specifications for road construction or sidewalk placement. Section 2702 of the County Road Law adverts to "construct[ing], improv[ing] and maintain[ing]" as well as "build[ing]", "straighten[ing], widen[ing], extend[ing] and alter[ing]" county roads but provides no standards for such road activities. 16 P.S. § 2702. Likewise, Section 2713 authorizes "the county commissioners [to] locate, construct and maintain sidewalks along county roads" but imposes no standards. 16 P.S. § 2713. The County has not adopted its own SALDO, and it has not adopted any

---

**17.** The County also argues that the trial court failed to give effect to Sections 2319 and 2401 of the Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 67319 and 67401. Sections 2319 and 2401 were both added by the Act of November 9, 1995, P.L. 350, and were made part of the MPC by Section 103. Section 2319 states as follows:

Nothing contained in this article shall be held to restrict or limit the Department of Transportation *or any county* in the exercise of any of its duties, powers and functions under any State law.

53 P.S. § 67319 (emphasis added).

Section 2401 states in relevant part:

(a) *The board of supervisors may by ordinance regulate* the line, grade and width of curbs, sidewalks or footpaths constructed along the roads or highways in the township, shall have general supervision over

them and may establish a grade or grades for curbs, sidewalks or footpaths, which grade or grades may be separate and apart from the grade or grades established for the cartway or roadway.

(b) If the highway is a State or county highway, the *written consent of the* Department of Transportation or the *county commissioners shall first be obtained.*

53 P.S. § 67401(a), (b) (emphasis added).

The County argues that this shows clear legislative intent that township supervisors can require sidewalks along county roads only with the written consent of the county commissioners, which is lacking in this case. However, this statutory language is not applicable because the Township is requiring a sidewalk beside Business Park Drive pursuant to its SALDO, not the Second Class Township Code.

standards for the construction of County roads or sidewalks.

Because there are no specific design standards in the County Road Law, there is no conflict with the SALDO. The County can comply with both the SALDO and the County Road Law. Even if there was a conflict, *Ogontz* directs that the SALDO must prevail. Giving effect to the Township's SALDO will not mean that the County's power to construct roads in the Township will be frustrated, only that it will be regulated.

The parties agree that the sidewalk issue is the main sticking point in this case. Business Park Drive crosses an active, multi-tracked railroad line. The County asserts that it received a permit from the Public Utility Commission for a vehicular railroad crossing but not for "pedestrian walkways over the tracks." County Reply Brief at 4. However, this is an issue to address in the land use appeal pending with the trial court.

■ The County Commissioners suggest that our holding today will lead to a lack of uniformity in county roads because counties will have to abide by different road requirements in each municipality where they wish to locate a county road. However, the Court's holding today is limited to county roads proposed as part of a subdivision and land development plan. If counties seek to establish county roads that are not part of a subdivision, then the result may be different. In any case, road uniformity is not guaranteed under the County Road Law because it does not contain, nor has the County adopted, uniform road standards.[18]

In summary, the Township's SALDO applies to the County's proposed roads in Packerton Business Park and does not conflict with the County Road Law. Therefore, the trial court did not err in denying the petition to lay out and open county roads using specifications inconsistent with the SALDO.

Accordingly, we affirm the trial court.

### ORDER

AND NOW, this 15th day of November, 2013, the order of the Court of Common Pleas of Carbon County dated January 15, 2013, in the above-captioned matter is hereby AFFIRMED.

---

18. The County notes that it could have filed its petition under the County Road Law and only filed a subdivision and land development plan after the road petition had been approved. Instead, it attempted to work with the Township, thus proving the maxim: "No good deed goes unpunished."