# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh, : 
                      Appellant : 
         : 
          v. :   No. 1228 C.D. 2014
         :   Argued: April 15, 2015
Fraternal Order of Police, Fort Pitt : 
Lodge No. 1 : 

BEFORE:    **HONORABLE DAN PELLEGRINI,** President Judge[1]
               **HONORABLE BERNARD L. McGINLEY,** Judge
               **HONORABLE BONNIE BRIGANCE LEADBETTER,** Judge
               **HONORABLE ROBERT SIMPSON,** Judge
               **HONORABLE MARY HANNAH LEAVITT,** Judge[2]
               **HONORABLE P. KEVIN BROBSON,** Judge
               **HONORABLE ANNE E. COVEY,** Judge

**OPINION BY**
**JUDGE LEADBETTER**                      **FILED: January 7, 2016**

       The City of Pittsburgh appeals from the order of the Court of Common Pleas of Allegheny County that affirmed a Supplemental Interest Arbitration Award (the Supplemental Award). That award modified the parties' Collective Bargaining Agreement (CBA) by inserting a non-residency clause. We reverse.

---

   [1] This case was assigned to the opinion writer before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

   [2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

The Fraternal Order of Police, Fort Pitt Lodge No. 1 (FOP) and the City were parties to a CBA covering the term January 1, 2010, through December 31, 2014. Section 18(S) of that CBA provided:

> [I]f the Pennsylvania State Legislature enacts legislation relating to ... the issue of residency requirements for police officers in cities of the second class, the parties may reopen the contract to negotiate and/or arbitrate under these limited conditions.

Reproduced Record (R.R) at 576a. It further provided that the arbitration panel retained jurisdiction to address that issue if the parties could not reach agreement. *Id.*

The Policemen's Civil Service Act (for Cities of the Second Class) (Civil Service Act)[3] provides civil service mandates that apply specifically to the City. Prior to October 24, 2012, Section 3 of the Civil Service Act provided that:

> [a] person applying for appointment shall not be required to be a resident of the city at the time of application for original appointment. The person shall, however, be required to become a bona fide resident of the city at the time of employment, and city residency must be maintained for the entire period of employment.

53 P.S. § 23532. However, on October 24, 2012, Act 195 of 2012 (Act 195),[4] which amended Section 3 of the Civil Service Act, became effective. Section 3 now provides "[a] city of the second class *may* require a police officer to become a bona fide resident of the city as a condition of employment." (Emphasis added.)

---

[3] Sections 1 through 10 of the Act of August 10, 1951, P.L. 1189, *as amended*, 53 P.S. §§ 23531-23540.

[4] Act of October 24, 2012, P.L. 147.

2

Accordingly, where the Civil Service Act once mandated that a person appointed as a police officer "shall" become a city resident at the time of employment and remain so for the entire period of employment, the General Assembly altered that mandate with the passage of Act 195.

Following the amendment of Section 3, the FOP asserted the right to re-open negotiations pursuant to Section 18(S) of the CBA. The FOP sought to negotiate a non-residency clause contrary to the City's long-standing requirement for all employees to live within the City's borders. The FOP and the City were unable to reach an agreement and pursued interest arbitration upon impasse. In June and September of 2013, the interest arbitration panel was re-convened. The City objected to the panel's jurisdiction, arguing that applicable, extant law does not authorize an interest arbitration panel to consider the police union's demand for non-residency.

On July 23, 2013, the Pittsburgh City Council passed a resolution to place a referendum question on the November 5, 2013 general election ballot, asking voters whether the City's Home Rule Charter should be amended to require police officers to remain residents of the city. The voters approved the in-city residence requirement.

On March 14, 2014, a majority of the interest arbitration panel rejected the City's challenge to its jurisdiction. The panel issued the Supplemental Award, modifying the city-only residency requirement to a mileage-based restriction requiring residency within 25 air miles of the City-County Building.

On, March 18, 2014, the City filed a petition for review in the court of common pleas, asserting that the panel acted without jurisdiction and exceeded its authority. Common pleas concluded that Act 195 permitted bargaining over

3

residency as a term and condition of employment. Common pleas also concluded that Act 195 empowered the arbitration panel to address residency. Common pleas rejected the City's argument that the General Assembly did not intend for Act 195 to permit unions to bargain over residency, reasoning that statutory construction principles assume that the General Assembly, when amending a statute, is cognizant of the applicable statutory and judicial authorities. Thus, the General Assembly was aware of case law holding that residency was subject to bargaining unless otherwise preempted or barred by statute. Common pleas also concluded that the award did not compel the City to perform an illegal act because the City's Home Rule Charter provision requiring city residency of all city employees cannot supersede rights guaranteed by the Police and Firemen Collective Bargaining Act (Act 111), 43 P.S. §§ 217.1 – 217.10.[5] This appeal followed.

Appellate review of an Act 111 interest arbitration award is in the nature of narrow certiorari. Section 7 of Act 111, 43 P.S. § 217.7. It is limited to issues regarding: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded his powers; and (4) deprivation of constitutional rights. *Michael G. Lutz Lodge No. 5 v. City of Phila.*, 84 A.3d 343, 350 (Pa. Cmwlth. 2014). A panel of arbitrators: 1) may not order the employer to perform an illegal act; 2) is limited to requiring that a public employer do that which it could do voluntarily; and 3) must craft an award that encompasses only the terms and conditions of employment. *Butler v. Butler Police Dep't, Fraternal Order of Police, Lodge No. 32,* 780 A.2d 847, 850 (Pa. Cmwlth. 2001). An error of law alone is not sufficient to reverse an award under this narrow scope of review. *Id*.

---

[5] Act of June 24, 1968, P.L. 237.

4

The City argues that the Supplemental Award exceeds the authority of the arbitration panel because Act 195 changed residency from a prohibited subject of bargaining to a specific managerial prerogative, thus preempting Act 111. Specifically, the City asserts that because the General Assembly was aware that residency is subject to mandatory bargaining unless otherwise preempted by statute, it intended to give the City the authority to determine whether a resident police force was necessary through enactment of Act 195. The City also contends that the Supplemental Award unduly infringes on its inherent managerial responsibilities involving considerations about where all its employees, not just police officers, should reside.

Article IX, Section 2 of the Pennsylvania Constitution provides, in relevant part:

> Municipalities shall have the right and power to frame and adopt home rule charters. ... A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time.

Pa. Const. art. 9, §2.

When the General Assembly implemented this constitutional provision in the Home Rule Charter and Optional Plans Law (Home Rule Charter Law), 53 Pa. C.S. §§ 2901-2984, it gave home rule charter communities the broadest powers, specifically imposing the presumption that those communities had the power to undertake any action that they desired, and that such action should be upheld unless it was specifically denied by either the Constitution, a statute or the home rule charter itself. Section 2961 the Home Rule Charter Law provides:

> A municipality which has adopted a home rule charter may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by statute or by its home rule charter. All grants of municipal power to municipalities governed by a home rule charter under this subchapter, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality.

53 Pa. C.S. § 2961. However, Section 2962(c) of the Home Rule Charter Law, 53 Pa. C.S. § 2962(c), provides that a municipality shall not "[e]xercise powers contrary to, or in limitation or enlargement of, powers granted by statutes which are applicable in every part of this Commonwealth."

What is embodied in the concept of home rule is that the citizens of the local democracy – municipality or county – shall be free to determine local concerns. Of course, if there is an overriding statewide policy involved, the General Assembly can pass legislation that supersedes such home rule municipalities' power. In a case where a home rule charter is in direct conflict with a provision of a statute of statewide application, the state statute controls. *Wecht v. Roddey*, 815 A.2d 1146, 1151 (Pa. Cmwlth. 2002), *appeal denied*, 827 A.2d 432 (Pa. 2003).

A home rule charter is adopted and amended by referendum. Sections 2926 and 2943 of the Home Rule Charter Law, 53 Pa. C.S. §§ 2926, 2943. A home rule charter is the equivalent of a constitution – it is the compact by which local citizens set forth the terms and conditions by which they consent to be governed. Importantly, provisions of a home rule charter have the force and status of an enactment of the legislature. *Spencer v. City of Reading Charter Bd.*, 97 A.3d 834, 840 (Pa. Cmwlth. 2014).

In accordance with the Home Rule Charter Law, the citizens of the City, by referendum, voted for the adoption of Section 711 of the City's Home

6

Rule Charter that specifically requires all city employees, including police officers, be domiciled in the City. It provides:

> All City employees and officials, including Police and Fire Bureau personnel, shall be domiciled in the City at the time of their initial appointment and shall continuously maintain their domicile within the City throughout their terms of employment with the City.

City of Pittsburgh Home Rule Charter, Article 7, § 711. There is no statewide law prohibiting the home rule charter from requiring its employees to reside within the employer's borders. In fact, and to the contrary, Section 3 of the Civil Service Act provides, in relevant part, that "[a] city of the second class may require a police officer to become a bona fide resident of the city as a condition of employment…. A city of the second class may require a reinstated police officer to meet the same residency requirement as all other police officers."[6]

Generally, municipal police officers are permitted to negotiate the terms and conditions of their employment. Section 1 of Act 111, 43 P.S. § 217.1, provides for the arbitration of disputes between a public employer and its public employees stating, in relevant part:

> Policemen … employed by a political subdivision … shall, through labor organizations … have the right to

---

[6] As noted above, Article 9, Section 2 of the Pennsylvania Constitution states, in relevant part, that "[a] municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time." Pa. Const. art. 9, §2. "In general, the adoption of a home rule charter acts to remove a municipality from the operation of the code provisions enumerating the powers of that particular class of municipality. Thus, in the absence of explicit constraint or collateral effect on another municipality, there will be no conflict between the home rule municipality's actions and the former code provisions, since the latter no longer apply." *Wecht*, 815 A.2d at 1152 (citation omitted).

bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

Under this provision, representatives of the public employer are allowed to negotiate and an arbitrator is allowed to impose generally anything regarding the non-managerial terms and conditions of a police officer's employment unless it is removed from discussion or award by other laws. For example, notwithstanding the fact that they implicate the terms and conditions of employment, a public employer cannot agree to, and an arbitrator cannot award: a contract provision eliminating the requirement that police officers complete the Municipal Police Officers' Education and Training Program as required by Section 2164 of the statute commonly referred to as the Municipal Police Education and Training Act, 53 Pa. C.S. § 2164, a provision eliminating the forfeiture of a pension for officers convicted of an enumerated crime under Section 3 of the Public Employee Pension Forfeiture Act, Act of July 8, 1978, P.L. 752, No. 140, *as amended*, 43 P.S. §1313 or, in the case of the state police, a provision affecting an officer's pension under Section 5955 of the State Employees' Retirement Code, 71 Pa. C.S. § 5955. In summary, an arbitration panel can award only that which the public employer, in the case, the City, its Mayor and its Council, have the power to agree to and nothing more.

As indicated above, the residency requirement for employment with the City was imposed by the City electorate's adoption of it in its Home Rule Charter, which has the force and status of an enactment of the General Assembly. This took away the ability of the City's officials to voluntarily bargain away the

8

residency requirement. Thus, the arbitrators' award in this case would require the City to commit an illegal act by violating its Home Rule Charter. In other words, absent statewide legislation prohibiting a municipality from imposing a residency requirement for its employees, the adoption of an amendment to a home rule charter requiring such residency by the electorate removes an arbitration panel's authority to issue an award that contravenes such a charter provision.

In reaching this conclusion, we must partially overrule our opinion in *City of Wilkes-Barre v. City of Wilkes-Barre Police Benevolent Association*, 814 A.2d 285 (Pa. Cmwlth. 2002).[7] In that case, the Court addressed whether an arbitration panel could properly issue a decision that did not require in-city residence when Section 8:02 of the City of Wilkes-Barre Home Rule Charter required all city employees to reside in Wilkes-Barre.

The Court noted that neither the home rule charter, nor an enactment by a home rule municipality, may contain provisions contrary to a statewide statute and Act 111 was such a statute.[8] Thus, the Court concluded:

> Act 111 provides policemen employed by a political subdivision the power to bargain with their public employers concerning the terms and conditions of their employment. *See* Section 1 of Act 111, 43 P.S. § 217.1. … When Act 111 applies, neither a home rule charter, nor an enactment by a home rule municipality may change the ability to bargain about residency.

*Id.*

---

[7] We do not overrule the portions of *Wilkes-Barre* that address pension rights or health care plans.

[8] Section 9 of Act 111, 43 P.S. § 217.9, provides that Act 111 shall be applicable to every political subdivision notwithstanding the fact that any such political subdivision has adopted a home rule charter.

9

However, the *Wilkes-Barre* court did not take into account that a home rule charter has the force and effect of a state statute. Section 1 of Act 111 provides only that police officers have the right to bargain collectively regarding the "terms and conditions" of their employment, including specifically identified issues such as wages, retirement and pensions. 43 P.S. § 217.1. Act 111 does not specifically identify residency as a term or condition of employment; rather judicial interpretation has construed it to be so. *Township of Moon v. Police Officers of the Twp. of Moon*, 498 A.2d 1305, 1313 (Pa. 1985). Nonetheless, when state law imposed a specific residency requirement before the Civil Service Act was amended, that law unquestionably superseded the general Act 111 requirement of bargaining over terms and conditions of employment. Similarly, because the Pittsburgh Home Rule Charter, which has the force of a state statute, imposes a residency requirement, it also prevails.

For all of the foregoing reasons, we reverse.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

Judge McCullough did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh,                       :
               Appellant         :
                            :
           v.                :   No. 1228 C.D. 2014
                            :
Fraternal Order of Police, Fort Pitt      :
Lodge No. 1                               :

## O R D E R

AND NOW, this 7th day of January, 2016, the order of the Court of Common Pleas of Allegheny County is hereby REVERSED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

City of Pittsburgh,                          :
                 Appellant       :
                               :
         v.                          :  No. 1228 C.D. 2014
                               :  Argued: April 15, 2015
Fraternal Order of Police,                   :
Fort Pitt Lodge No. 1                        :


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
               HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE MARY HANNAH LEAVITT, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge

DISSENTING OPINION
BY JUDGE SIMPSON               FILED: January 7, 2016


What happens when a provision of a municipality's home rule charter is inconsistent with a state statute of general application? The Majority holds that the home rule charter provision can prevail if it is more specific than the provision of the state statute. I respectfully disagree.


**1.**

Here, according to the Majority, the inconsistency involves whether police officers of the City of Pittsburgh (City) may bargain a requirement of residency in the City. On the one hand, Section 1 of the Policemen and Firemen Collective Bargaining Act (Act 111)[1] guarantees "[p]olicemen … the right to

---

[1] Act of June 24, 1968, P.L. 237, 43 P.S. §217.1.

bargain collectively with their public employers concerning the terms and conditions of their employment ….” It is beyond question that Act 111 is a state statute of general application. Section 9 of Act 111, 43 P.S. §217.9. Our Supreme Court has held that under Act 111 residency is a bargainable condition of employment. Twp. of Moon v. Police Officers of Twp. of Moon, 498 A.2d 1305 (Pa. 1985).

On the other hand, during a contract impasse and ensuing arbitration between the City and its police union, Fraternal Order of Police, Fort Pitt Lodge No. 1 (FOP), Pittsburgh City Council ordered a referendum. Pursuant to the referendum the voters amended the City’s Home Rule Charter to require that all City employees, including police officers, maintain a domicile in the City. In effect, the new Home Rule Charter provision withdraws from the City the authority to bargain with its employees about residency. In such a circumstance, an arbitrator under Act 111 cannot award police officers relief from the residency requirement, because the City could not agree to the relief voluntarily.

In sum, the inconsistency in this case, as framed by the Majority, is between the Act 111 guarantee for police officers to bargain with the City about residency, and the new provision of the City’s Home Rule Charter which precludes the City from bargaining about residency.

**2.**

This inconsistency should be easy to resolve. This is because the Home Rule Charter and Optional Plans Law (Home Rule Charter Law)[2] limits home rule authority, like that exercised here. Specifically, Section 2962(c)(2) provides that a municipality shall not "[e]xercise powers contrary to, or in limitation or enlargement of, powers granted by statutes which are applicable in every part of this Commonwealth." 53 Pa. C.S. §2962(c)(2). Further, Section 2962(e) of the Home Rule Charter Law, 53 Pa. C.S. §2962(e), provides, with emphasis added:

> **(e) Statutes of general application.--**Statutes that are uniform and applicable in every part of this Commonwealth shall remain in effect and shall not be changed or modified by this subpart. <u>Statutes shall supersede any municipal ordinance or resolution on the same subject.</u>

Given these express limitations in the Home Rule Charter Law, it seems obvious that in the event of a conflict between a statute of general application, such as Act 111, and a home rule charter provision, the state statute prevails. In this context, the Act 111 guarantee of police officers' ability to bargain over residency prevails over the Home Rule Charter requirement of residency.

Indeed, this Court has already made that ruling. In <u>City of Wilkes-Barre v. City of Wilkes-Barre Police Benevolent Ass'n</u>, 814 A.2d 285, 290 (Pa. Cmwlth. 2002), we held that under Act 111 residency is a condition of employment and not a managerial prerogative. We also held that the General

---

[2] 53 Pa. C.S. §§2901-3171.

Assembly intended Act 111 to apply despite the existence of a home rule charter. Id. at 290. Neither the home rule charter, nor an enactment of a home rule municipality may contain provisions contrary to or in limitation or enlargement of powers established by Act 111. Id. Act 111 provides police officers employed by a political subdivision the power to bargain with their public employers concerning the terms and conditions of their employment. Id. When Act 111 applies, neither a home rule charter nor an enactment by a home rule municipality may change the ability to bargain about residency. Id. The failure to include a residency requirement in an arbitration award, contrary to a provision in a home rule charter, did not force the city to perform an illegal act. Id.

Thus, under the express terms of the Home Rule Charter Law, and under a prior holding of this Court, the Act 111 guarantee of police officers' rights to bargain about residency prevails over an inconsistent home rule charter provision.

Further, I would reach the same result even without this Court's prior holding in City of Wilkes-Barre. Usually, when there is a conflict between a state statute and a municipal enactment, we apply principles of preemption to resolve the controversy. Based on the express limitations placed on home rule municipalities by the Home Rule Charter Law, as discussed above, and applying the principle of express preemption, I conclude that the General Assembly intended state statutes of general application to supersede inconsistent home rule municipality enactments. Unfortunately, the Majority does not consider principles of preemption.

**3.**

How does the Majority deal with these clear statements of law? The Majority determines that "a home rule charter has the force and effect of a <u>state</u> statute," and an inconsistency between state statutes should be resolved by resort to rules of statutory construction. Maj. Slip Op., at 9-10 (emphasis added).[3] The Majority cites <u>Spencer v. City of Reading Charter Board,</u> 97 A.3d 834 (Pa. Cmwlth. 2014) for this remarkable proposition. Maj. Slip Op., at 6. However, the Majority errs in several ways.

First and foremost, <u>Spencer</u> does not support the Majority's claim. What the Court in <u>Spencer</u> actually said was that "[a] home rule charter has the force and status of an enactment of the legislature." 97 A.3d at 840. Significantly, the word "state" does not appear in the quote; rather, it was *added* by the Majority. What the Court was trying to convey in <u>Spencer</u> was that a home rule charter provision has the force and effect of an enactment of the municipality's legislative body, not that a home rule charter provision is the equivalent of a state statute.

Moreover, <u>Spencer</u> dealt with standing of a board created by the municipality's home rule charter to challenge a trial court's decision. <u>Spencer</u> did *not* deal with a conflict between a state statute and a home rule charter provision. Further, the <u>Spencer</u> Court did *not* proclaim that state statutes of general application stand on equal footing with home rule charter provisions, nor did the <u>Spencer</u> Court resort to statutory construction to resolve inconsistencies. The

---

[3] It is noteworthy that the parties do not make this argument. Instead, the Majority raises this legal theory on its own, and we lack the parties' analysis of this theory.

Spencer Court could not do so in light of the express limitations placed on home rule municipalities by the Home Rule Charter Law, discussed above.

Second, even if we were to treat a state statute and a home rule charter provision as on equal footing, the Majority ignores the analytical process our Supreme Court uses to determine which entity the "legislature" intended to have preeminent powers over a given area of regulation. This process was originally set forth in Department of General Services v. Ogontz Areas Neighbors Ass'n, 483 A.2d 448 (Pa. 1984), and the process was recently applied again by the Court in Southeastern Pennsylvania Transportation Authority v. City of Philadelphia, 101 A.3d 79 (Pa. 2014). "The first step requires the reviewing court to determine, through the examination of the statutes, which governmental entity, if any, the General Assembly expressly intended to be preeminent." Southeastern Pennsylvania Transportation Authority, 101 A.3d at 87. Based on the express limitations placed on home rule municipalities by the Home Rule Charter Law, discussed above, I conclude the General Assembly intended that its enactments of state-wide application should be preeminent over inconsistent enactments of a home rule municipality.

**4.**

Finally, from a policy perspective, the prospect of a home rule municipality using an amendment of the home rule charter to gain an advantage in ongoing collective bargaining is troublesome. The Majority utterly fails to address this concern.

**5.**

For all these reasons, I would hold that City police officers have the right under Act 111 to bargain for the terms of their employment, including residency, despite any contrary provision in the City's Home Rule Charter. I would also hold that the arbitrators had the authority to enter an award regarding residency. Accordingly, I would affirm the respected trial court, which declined the City's invitation to vacate the arbitration award.

_____
ROBERT SIMPSON, Judge

Judges Brobson and Covey join in this dissent.