**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| CITY OF PITTSBURGH, | : | No. 18 WAP 2016 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court entered January |
| | : | 7, 2016 at No. 1228 CD 2014, reversing |
| v. | : | the Order of the Court of Common |
| | : | Pleas of Allegheny County entered July |
| | : | 9, 2014 at No. SA 14-000290. |
| FRATERNAL ORDER OF POLICE, FORT | : | |
| PITT LODGE NO. 1, | : | ARGUED:  November 1, 2016 |
| | : | |
| Appellant | : | |


**OPINION**


**JUSTICE MUNDY**                    **DECIDED:  MAY 22, 2017**

In this discretionary appeal, we consider whether a home rule municipality may amend its home rule charter[1] to eliminate mandatory subjects of bargaining as defined by the Police and Firemen Collective Bargaining Act, commonly known as Act 111, 43 P.S. §§ 217.1 - 217.10;  the Pennsylvania Labor Relations Act ("PLRA"), 43 P.S. §§ 211.1 -215.5; and applicable case law.

---

[1] The Home Rule Charter and Optional Plans Law (Home Rule Charter Law), 53 Pa.C.S. §§ 2901-2984, defines "[h]ome rule charter," in relevant part, as "[a] written document defining the powers, structures, privileges, rights and duties of the municipal government and limitations thereon."  53 Pa.C.S. § 2902.

Appellant, the Fraternal Order of Police, Fort Pitt Lodge No. 1 ("FOP") is the exclusive collective bargaining representative for the police officers of Appellee, the City of Pittsburgh ("City"), pursuant to Act 111 and the PLRA.

The FOP and the City are parties to a collective bargaining agreement that ran from January 1, 2010 through December 31, 2014. Section 18(S) of the agreement provides, in relevant part:

> If, during the term of this agreement . . . the Pennsylvania State Legislature enacts legislation relating to . . . residency requirements for police officers in cities of the second class, the parties may reopen the contract to negotiate and/or arbitrate under these limited conditions. The Panel shall retain jurisdiction to address such issues if agreement cannot be reached by the parties.

Agreement, 1/01/10-12/31/14, at 92.

The City is subject to the Policemen's Civil Service Act (for Cities of the Second Class), 53 P.S. §§ 23531- 23540, which prior to October 24, 2012, provided:

> A person applying for appointment shall not be required to be a resident of the city at the time of application for original appointment. The person shall, however, be required to become a bona fide resident of the city at the time of the employment, and city residency must be maintained for the entire period of employment.

53 P.S. § 23532 (repealed).

However, the General Assembly repealed the residency mandate on October 24, 2012, through the enactment of Act 195 of 2012, which now provides, "[a] city of the second class may require a police officer to become a bona fide resident as a condition of employment." 53 P.S. § 23532.

In light of Act 195, the parties met to bargain the residency issue. Because they were unable to reach an agreement, the arbitration panel was reconvened, and held hearings on June 28, 2013 and September 23, 2013. At the commencement of the first hearing, the City objected to the arbitrability of the residency issue. N.T. Hrg, 6/28/13,

at 5. On July 29, 2013, the City submitted a brief to the panel on this topic. Meanwhile, on July 23, 2013, the Pittsburgh City Council passed a resolution to place a referendum on the upcoming general election ballot asking the voters whether the City's home rule charter should be amended to require all City employees and officials, including police and fire personnel, to maintain their domicile within the City. Voters approved the home rule charter amendment on November 5, 2013.

On March 14, 2014, the arbitration panel issued a Supplemental Interest Arbitration Award, which provided that the City-only residency requirement would immediately discontinue and be replaced with the following provision: "Officers shall be required to reside within a twenty-five (25) air-mile radius from the City-County Building." Supplemental Interest Arbitration Award, 3/14/14, at 4. One member of the three-member panel dissented.

The City filed a timely petition for review in the Allegheny County Court of Common Pleas, seeking to vacate the supplemental award because the panel acted without jurisdiction and exceeded its authority under Act 111.

Writing for the trial court, Judge Robert J. Colville noted that an arbitration panel may direct a municipality to do anything that it is lawfully empowered to do. Relying on *Township of Moon v. Police Officers of the Township of Moon*, 498 A.2d 1305 (Pa. 1985), Judge Colville determined that residency is a term and condition of employment for police officers and is thus a matter within the jurisdiction and authority of an Act 111 arbitration panel. Because the Act 195 amendments placed residency within the City's control, an interest arbitration award could modify the residency requirement.

The trial court also rejected the City's argument that the interest arbitration award was unconstitutional because it required the City to act in a manner contrary to the amended home rule charter. Judge Colville noted that a home rule charter "cannot

supersede Act 111, a statewide statute." Trial Ct. Op., 7/9/14, at 10. In support of this conclusion, the court relied on Section 2962(c) of the Home Rule Charter Law, which provides that a municipality is precluded from exercising "powers contrary to, or in limitation or enlargement of, powers granted by statutes which are applicable in every part of this Commonwealth." 53 Pa.C.S. § 2962(c)(2). The trial court noted that "Act 111 is a statute applicable to all municipalities throughout the Commonwealth." Trial Ct. Op., at 11. The trial court further noted that Section 2962(c)(5) of the Home Rule Charter Law prohibits a home rule municipality from enacting "any provision inconsistent with any statute heretofore enacted prior to April 13, 1972 affecting the rights, benefits or working conditions of any employee of a political subdivision of this Commonwealth." 53 Pa.C.S. § 2962(c)(5). Because the General Assembly enacted Act 111 in 1968, and it affects the rights, benefits and working conditions of municipal employees by allowing them to bargain or arbitrate to set the terms of their employment, the trial court concluded that the home rule charter cannot restrict the scope of collective bargaining issues under Act 111, including residency. Accordingly, the trial court affirmed the supplemental interest arbitration award.

The City appealed, and a divided en banc Commonwealth Court reversed. Writing for the majority, Judge Bonnie Brigance Leadbetter, noted that the General Assembly, through the Home Rule Charter Law, gave home rule municipalities broad powers "to undertake any action they desired, and that such action should be upheld unless it was specifically denied by the Constitution, a statute or the home rule charter itself." *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 129 A.3d 1285, 1288 (Pa. Cmwlth. 2016). After observing that a home rule charter is the equivalent of a constitution, the court relied on *Spencer v. City of Reading Charter Bd.*, 97 A.3d 834, 840 (Pa. Cmwlth. 2014) for the proposition that "provisions of a home rule

charter have the force and status of an enactment of the legislature." *City of Pittsburgh*, 129 A.3d at 1289. The court concluded that no statewide law prohibits the home rule charter from requiring the City's employees to live within its borders. It explained that although Act 111 allows an arbitrator to impose any non-managerial conditions and conditions of employment, unless removed from discussion or award by other laws, "an arbitration panel can only award that which the public employer, in this case, the City, its Mayor and its Council, have the power to agree to and nothing more." *Id.* at 1290. Because the residency requirement is included in the home rule charter, which "has the force and status of an enactment of the General Assembly," *id.*, City officials lost the ability to bargain away residency requirements. Accordingly, the arbitrators' award would require the City to commit an illegal act.

In reaching this conclusion, the court partially overruled its opinion in *City of Wilkes-Barre v. City of Wilke-Barre Police Benevolent Association*, 814 A.2d 285 (Pa. Cmwlth. 2002), in which it held that "[w]hen Act 111 applies, neither a home rule charter, nor an enactment by a home rule municipality may change the ability to bargain about residency." *Id.* at 290. The majority faulted the *City of Wilkes-Barre* court for failing to recognize that a home rule charter has the force and effect of a state statute, thus superseding general Act 111 requirements for bargaining over terms and conditions of employment.

Judge Robert Simpson filed a dissenting opinion, joined by Judge Kevin Brobson and Judge Anne E. Covey, noting that where a conflict exists between a statute of general application such as Act 111 and a home rule charter provision, the state statute prevails. Judge Simpson observed that he would have reached this result even without *City of Wilkes-Barre* because the limitations placed on home rule municipalities by the Home Rule Charter Law, and the application of the principles of express preemption,

indicate the General Assembly intended state statutes of general application to supersede inconsistent home rule municipality enactments. The dissenting opinion further stated that the majority erred by citing *Spencer* for the proposition that a home rule charter provision is the equivalent of a state statute. Rather, the dissenting opinion noted that *Spencer* held "a home rule charter provision has the force and effect of an enactment of the municipality's legislative body." *City of Pittsburgh*, 129 A.3d at 1293 (Simpson, J. dissenting).

We granted allocatur to consider whether a home rule municipality may amend its home rule charter to eliminate mandatory subjects of bargaining as defined by Act 111, the PLRA and other applicable law, and whether a municipality's home rule charter provision eliminating a mandatory subject of bargaining for its police officers is preempted by Act 111. *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 139 A.3d 1257 (Pa. 2016) (order).

We review an Act 111 interest arbitration award under a narrow scope of review, limited to (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) whether the arbitrators exceeded their power; and (4) whether a deprivation of constitutional rights occurred. *Michael G. Lutz Lodge No. 5 v. City of Philadelphia*, 129 A.3d 1221, 1227 (Pa. 2015).

The FOP argues that the City is subject to several restrictions set forth in the Home Rule Charter Law, including Section 2962, which provides in relevant part:

**§ 2962. Limitation on municipal powers**

. . .

**(c) Prohibited powers.**--A municipality shall not:

. . .

(2) Exercise powers contrary to or in limitation or enlargement of powers granted by statutes which are applicable in every part of this Commonwealth.

. . .

 (5) Enact any provision inconsistent with any statute heretofore enacted prior to April 13, 1972, affecting the rights, benefits or working conditions of any employee of a political subdivision of this Commonwealth.

. . .

(e) Statutes of general application.--Statutes that are uniform and applicable in every part of this Commonwealth shall remain in effect and shall not be changed or modified by this subpart. Statutes shall supersede any municipal ordinance or resolution on the same subject.

53 Pa.C.S. § 2962(c)(2),(5) & (e).

The right of Pittsburgh police officers to engage in collective bargaining derives from Act 111, Section 9 of which specifically defines the scope of its application to include home rule charter municipalities.

The provisions of this act shall be applicable to every political subdivision of this Commonwealth notwithstanding the fact that any such political subdivision, either before or after the passage of this act, has adopted a home rule charter.

43 P.S. § 217.9.  As such, the FOP asserts that Act 111 limits municipal powers as set forth in Section 2962 of the Home Rule Charter Law.

Here, the Commonwealth Court majority recognized that the City's legislative authority is limited by Section 2962, but determined that residency is not specifically identified in Section 1 of Act 111 or any other statute.  Therefore, it is not protected by the limitations on municipal powers set forth in the Home Rule Charter Law.  However, the FOP maintains that the collective bargaining rights set forth in Section 1 are intentionally broad, and do not limit police officers to bargaining over specific topics such as wages or insurance.  Section 1 provides:

Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor

organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

43 P.S. § 217.1.

This Court has held that "residency, as a legitimate condition of employment is within the scope of collective bargaining." *Township of Moon*, 498 A.2d at 1313. Accordingly, the FOP argues that by precluding bargaining over this working condition, the home rule charter amendment interferes with the officers' Act 111 rights. The City, as a home rule charter municipality, shall not enact any provision inconsistent with a statute enacted prior to 1972 "affecting the rights, benefits or working conditions" of its employees. 53 Pa.C.S. § 2962(c)(5). All criteria are present here. First, Act 111 predates 1972, having been enacted in 1968. Second, it specifically created the right for police officers to bargain over and arbitrate for their working conditions. Third, residency is a working condition. *See Township of Moon*, 498 A.2d at 1313. Fourth, the charter amendment is "inconsistent with" the officers' right to bargain or arbitrate the residency issue. Therefore, the FOP asserts that the charter provision requiring domicile within the city limits violates Section 2962(c)(5).

The FOP further argues that the charter provision violates Section 2962(c)(2) of the Home Rule Charter Law, which prohibits the City, as a home rule charter municipality, from acting to limit "any powers granted by statutes which are applicable in every part of this Commonwealth." Act 111 clearly applies in every part of the Commonwealth, providing officers with the power to bargain over and arbitrate working conditions. The charter amendment limited these powers by removing a working condition as a bargainable subject, and thus is contrary to Section 2962(c)(2).

The FOP further notes that the opinion of the Commonwealth Court fails to address the requirement of Section 2962(e) that uniform statutes of statewide application may not be modified. Because the Commonwealth Court's decision permits a home rule charter municipality to divest officers of the right to bargain over a condition of employment, contrary to Section 1 of Act 111, the FOP asserts that the home rule charter amendment violates Section 2962(e).

The FOP also relies on Article IX, Section 2 of the Pennsylvania Constitution which provides, in relevant part:

> Municipalities shall have the right and power to frame and adopt home rule charters. . . . A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time.

PA. CONST. art. IX, § 2.

The Pennsylvania Constitution provides that home rule charters and amendments thereto are subservient to the limitations imposed by the General Assembly. Section 2962 of the Home Rule Charter Law, which provides that statutes of general application, "shall not be changed or modified," is such a legislatively imposed limitation. Because Act 111 is a uniform statute applicable throughout the Commonwealth, the FOP maintains the home rule charter amendment that removes residency as a subject of arbitration is unenforceable.

In contrast to the FOP, and consistent with the Commonwealth Court, the City argues that adoption of a charter provision by the electorate is equal in force and effect to a statute. The City relies on *In re Addison*, 122 A.2d 272, (Pa. 1956), *appeal dismissed*, 352 U.S. 956 (1957), where this Court stated, "a constitutionally permissible adoption of a municipal charter is not one whit less in dignity than a statute of the legislature granting a charter." *Id.* at 276.

The City asserts that with Act 195 the General Assembly gave it the right to determine, as a matter of local concern, whether to impose a residency requirement on police officers. Once the home rule charter was amended to include a residency requirement, it insists residency was no longer a term or condition of employment subject to collective bargaining under Act 111. The following arguments raised by the City are all based on this premise.

The City notes that a home rule municipality "may exercise any powers and perform any function not denied to it by the Constitution of Pennsylvania, by statute or by its home rule charter." 53 Pa.C.S. § 2961. It asserts that none of the limitations on municipal powers set forth above in Section 2962 of the Home Rule Charter Law restrict it from imposing a residency requirement for employees.

. Although the City recognizes that Act 111 is "applicable in every part of this Commonwealth," 53 Pa.C.S. § 9262(c)(2), it maintains that the residency requirement is not contrary to, and does not limit any power that Act 111 grants. The City relies on *Washington Arbitration Case*, 259 A.2d 437 (Pa. 1969), where this Court held, "[t]he essence of our decision is that an arbitration award may only require a public employer to do that which it could do voluntarily." *Id.* at 442. Here, the City argues the home rule charter residency provision, authorized by Act 195, did not contradict an Act 111 arbitrator's inherent powers, which are limited by what a public employer can and cannot do.

Likewise, the City recognizes that Act 111, which was enacted prior to April 13, 1972, "affect[s] rights, benefits or working conditions of any employee of a political subdivision." 53 Pa.C.S. § 2962(c)(5). However, it maintains that the home rule charter's residency requirement for all City employees is not inconsistent with Act 111,

and, as a legitimate act of a home rule municipality, is not prohibited under Section 2962(c)(5).

The City further posits the limitation articulated in Section 2962(e), that uniform statutes "shall remain in effect and shall not be changed or modified by this subpart," 53 Pa.C.S. § 2962(e), is inapposite because determinations about Act 111 bargaining obligations over a particular matter are case-specific inquiries. *Borough of Ellwood City v. Pa. Labor Relations Bd.*, 998 A.2d 589, 598 (Pa. 2010). It asserts that a change in a statutory scheme can create a managerial prerogative, authorize local action and thereby change bargaining rights about working conditions.

The City asserts that in 2012, when the General Assembly considered amending the explicit requirement of residency as a condition of employment, it could have retained the "shall" language mandating residency for police officers, 53 P.S. § 23532 (repealed), or deleted the "shall" provision without further amendment; or added, as it did, the provision, "[a] city of the second class may require a police officer to become a bona fide resident as a condition of employment." 53 P.S. § 23532. The City maintains that under the controlling principles of statutory construction, the new language must be read as the General Assembly's grant of authority to the City to decide whether to require residency. The City argues that the General Assembly authorized it, and not an Act 111 arbitrator, to decide whether to require residency.

The City's position can be summarized as follows: where a home rule charter provision establishes a residency requirement, the subject of residency is removed from the collective bargaining requirements of Act 111. Essentially, the home rule charter transforms residency from a subject of bargaining into a managerial prerogative. Accordingly, the arbitration panel lacked the authority to order the elimination of the residency provision. However, the FOP suggests this position is untenable in light of

the fact that resolution of this matter is grounded in Act 195, which amended the relevant section of the Policemen's Civil Service Act (for Cities of the Second Class) to provide "a city of the second class may require a police officer to become a bona fide resident as a condition of employment." 53 P.S. § 23532.

We agree with the FOP that the provision of authority to a municipality to take action with regard to a bargainable subject, as Act 195 does here, does not give the municipality the ability to place those subjects out of the reach of an interest arbitration panel. In *Chirico v. Board of Supervisors for Newtown Township*, 544 A.2d 1313 (Pa. 1988), this Court reviewed an arbitration award creating a disability pension fund benefit equal to 65% of an officer's final average salary. The Township appealed the award, asserting that such a benefit, which surpassed the 50% benefit applicable to regular retirements, exceeded the arbitrator's authority. The Court focused on the Municipal Police Pension Law, 53 P.S. § 767-778, which governs pensions for police officers in boroughs, towns and townships with three or more full-time officers. Section 771 of the Act provides:

> In the case of the payment of pensions for permanent injuries incurred in-service and to families of members killed in-service, the amount and commencement of the payments shall be fixed by regulations of the governing body of the borough, town or township.

53 P.S. § 771.

The Law vested the township supervisors with the authority to fix the amount and commencement of any disability payments. This Court held that the statutory language allowed the township supervisors to fix the disability pension benefit at 65% of final average salary if they wished to do so. Because the supervisors had this authority, the arbitrators also had this authority. *Chirico*, 544 A.2d at 1317. Contrary to *Chirico*, the City argues that the language permitting the City to establish residency restrictions converts residency from a bargainable subject into a matter of managerial prerogative.

However, the new language of Act 195 recognizes the modification of residency as legal, by providing that the City "may require" officers to become residents. Thus, where a municipality has the authority to set or not to set a residency restriction, the Act 111 interest arbitration panel has the same authority. Accordingly, the arbitration panel did not compel the City to engage in an illegal act when it modified the residency requirement.

The question of whether a topic is a subject of bargaining or a managerial prerogative under Act 111 was analyzed by this Court in *Ellwood City, supra,* where we concluded that a matter is considered a managerial prerogative where it is part of the public employer's "essential managerial responsibilities," *id.* at 600, "such as decisions regarding the programs of the employer, standards of services, overall budget, use of technologies, organizational structure and selection and direction of employees." *Id.* at 601. Such functions are "inherently managerial in nature." *Id.* A restriction on where police officers live is not an entrepreneurial topic. *Township of Moon*, 498 A.2d at 1313. Once a subject is deemed a mandatory subject of bargaining, it is only removed from the authority of an Act 111 interest arbitration where a statute has mandated a particular result. *Id.*

With the enactment of Act 111 in 1968, the General Assembly provided that police officers and firefighters have "the right to bargain collectively with their public employers concerning the terms and conditions of their employment." 43 P.S. § 217.1. To ensure that home rule municipalities would not abrogate this right, the General Assembly enacted Section 9 of Act 111, specifically providing that the act is applicable to every political subdivision in the Commonwealth, regardless of its adoption of a home rule charter. Consistent with Act 111, Sections 2962(c)(2),(5) and (e) of the Home Rule Charter Law place limitations on home rule municipalities. Section 2962(c)(2) precludes

exercise of powers contrary to or in limitation or enlargement of powers granted by statutes applicable in every part of the Commonwealth. Because Act 111 specifically applies to every political subdivision, any act by a municipality that is contrary to Act 111 is prohibited. Although not specified in the statutory language of Act 111, our case law has clarified that residency is a mandatory subject of bargaining. Accordingly, the home rule charter provision requiring residency is at odds with an act of statewide application. Section 2962(c)(5), which prohibits enacting any provision inconsistent with a statute enacted prior to April 13, 1972 "affecting the rights, benefits and working conditions of any employee of a political subdivision[,]" is implicated here because Act 111 of 1968 was enacted before that date, and affects the rights, benefits or working conditions of employees. As there is a patent inconsistency between Act 111, which provides for bargaining over residency, and the home rule charter provision that removes residency as a subject of bargaining, the home rule charter provision violates Section 2962(c)(5). In addition, Section 2962(e) provides that statutes that are uniform and applicable in every part of the Commonwealth shall remain in effect, and shall not be changed or modified. Because the home rule charter amendment changed or modified Act 111 by removing residency as a subject of collective bargaining, it violates Section 2962(e) as well. Thus, based strictly on Section 2962 of the Home Rule Charter Law, the FOP is entitled to relief.

Furthermore, the right to engage in home rule flows from Article IX, Section 2 of the Pennsylvania Constitution, which permits a home rule municipality to "exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time." PA. CONST. art. IX, § 2. In *Spahn v. Zoning Board of Adjustment*, 977 A.2d 1132 (Pa. 2009), we noted, "[t]hus 'by constitutional mandate the General Assembly may limit the functions to be performed by home rule

municipalities.'" *Spahn*, 977 A.2d at 1143-44 (quoting *Ortiz v. Commonwealth*, 681 A.2d 152,156 (Pa. 1996)).

*Spahn* arose under the First Class City Home Rule Act, 53 P.S. §§ 13101-13157. Like Section 2962 of the Home Rule Charter Law, which applies in the instant matter, the First Class City Home Rule Act provides, "[n]otwithstanding the grant of powers in this act, no city shall exercise powers contrary to or in limitation or enlargement of, powers granted by the acts of the General Assembly which are . . . applicable in every part of the Commonwealth." 53 P.S. § 13133. Accordingly, this Court concluded that "local ordinances enacted pursuant to the local Charter are subordinate to the Home Rule Act when the matter at issue is one of statewide concern, and where the two conflict, then the subordination mandate of the Home Rule Act takes precedence and controls." *Spahn*, 977 A.2d at 1144.

Pursuant to Article IX, Section 2 of the Pennsylvania Constitution, home rule charters are subservient to limitations imposed by the General Assembly. Section 2962(e) provides that "statutes that are uniform and applicable in every part of this Commonwealth shall remain in effect and shall not be changed or modified." 53 Pa.C.S. § 2962(e). Because Act 111 is "applicable to every political subdivision of this Commonwealth," 43 P.S. § 217.9, the charter amendment modifying rights under Act 111 is unenforceable.

We also granted allowance of appeal to determine whether a municipality's home rule charter provision eliminating a mandatory subject of bargaining for its police officers is preempted by Act 111. As this Court noted in *Southeastern Pennsylvania Transportation Authority v. City of Philadelphia*, 101 A.3d 79 (Pa. 2014) *(SEPTA)*:

> In a series of cases beginning with our decision in [*Department of General Services v.*] Ogontz [*Area Neighbors Ass'n.*, 483 A.2d 488 (Pa. 1984)], this Court has held that a Commonwealth agency's challenge to a

municipality's exercise of authority over it does not represent "a contest between superior and inferior governmental entities, but instead a contest between two instrumentalities of the state." *See Ogontz, supra* at 452; *County of Venango v. Borough of Sugarcreek*, 626 A.2d 489, 490 (Pa. 1993); *Hazleton Area Sch. Dist. v. Zoning Hearing Bd*., 778 A.2d 1205, 1210 (Pa. 2001). That is, because the legislature authorized the creation of both entities, and set the limits of each entity's authority, our task is to determine, through an examination of the relevant statutes, which entity the legislature intended to have preeminent powers. *Ogontz, supra* at 452. In short, "[t]he problem, essentially, is one of statutory interpretation." *Id.* Our standard of review of such a question of statutory interpretation is de novo, and our scope of review is plenary. *Hazleton, supra* at 1213.

 As identified in *Hazleton*, our opinion in *Ogontz, supra* sets forth the analytical process a court is to follow to determine which entity the legislature intended to have preeminent powers over a given area of regulation.

> The first step requires the reviewing court to determine, through examination of the statutes, which governmental entity, if any, the General Assembly expressly intended to be preeminent. *Id.* In the event there is no such express legislative mandate, the second step requires the court "to determine legislative intent as to which agency is to prevail ... turn[ing] to the statutory construction rule that legislative intent may be determined by a consideration, inter alia, of the consequences of a particular interpretation."

*Hazleton, supra* at 1210 (quoting *Ogontz, supra* at 455 (citing in turn 1 Pa.C.S. § 1921(c)(6)) (emphasis omitted).

*SEPTA*, 101 A.3d at 86.

Express preemption occurs "where the statute includes a preemption clause, the language of which specifically bars local authorities from acting on a particular subject matter." *Hoffman Mining Co., Inc. v. Zoning Hearing Board of Adams Township*, 32 A.3d 587, 593 (Pa. 2011). Here, a review of the authority previously relied upon leads us to conclude that express preemption clearly applies in this matter. Section 2962 of the Home Rule Charter Law contains three explicit preemption clauses, *see supra* at 6-

7.  Section 2962(e) prohibits home rule charter municipalities from taking any action that changes or modifies a uniform statute of statewide application.  Section 9 of Act 111 makes clear that it is "applicable to every political subdivision of this Commonwealth."  43 P.S. § 217.9.  Furthermore, Section 2962(e) explicitly provides that "[s]tatutes shall supersede any municipal ordinance or resolution on the same subject."  53 P.S. § 2962(e).  By including the word "supersede," the General Assembly emphasizes that statutes of statewide application predominate over enactments of home rule municipalities.

Section 2962(c) provides that a municipality may not limit "powers granted by statutes which are applicable in every part of this Commonwealth."  53 Pa.C.S. § 2962(c)(2).  Accordingly, the City's ability to remove a subject of collective bargaining created by Act 111 is preempted.

Section 2962(c)(5) prohibits the enactment of "any provision inconsistent with any statute heretofore enacted prior to April 13, 1972, affecting the rights, benefits or working conditions of any employee of a political subdivision of this Commonwealth."  53 Pa.C.S. § 2962(c)(2).  Public sector collective bargaining rights are set forth in Act 111, which became effective in 1968, and the Public Employe Relations Act (PERA), 43 P.S. §§ 1101.101 - 1101.2301, which became effective in 1970.  Thus, the General Assembly has preempted home rule municipalities from undermining collective bargaining rights under Act 111 and PERA.

Accordingly, the order of the Commonwealth Court permitting a home rule municipality to redefine subjects of collective bargaining is contrary to Act 111, and therefore is reversed.  The order of the trial court affirming the March 14, 2014 supplemental interest arbitration award directing that officers shall be required to reside within a twenty-five mile radius from the City-County Building is reinstated.

Chief Justice Saylor and Justices Baer, Donohue, Dougherty and Wecht join the opinion.

Justice Todd did not participate in the decision of this case.